May it please the Court, Francesca Frichero on behalf of Caleb Price. When a crucial witness lives locally at a known address with a known telephone number and expressed an interest in pursuing a prosecution, then due process requires that the government at least attempt to secure that witness's testimony before the court. In this case, there was absolutely no attempt at all. No subpoenaing the witness, no attempt to subpoena the witness, no letter to the witness, no information that the witness even knew the time and place set for the hearing. Under Morrissey, it was clearly a deprivation of Mr. Price's right to confront the adverse witnesses against him. Well, they did know that the witness expressed the intent not to cooperate and the wish not to get involved, right? The evidence on that question was that the witness expressed that in a telephone conversation after the revocation had already occurred. There was none of that information all the way up until Judge Hagedy revoked Mr. Price's supervisor's case. That statement suggests to me, and this may be the crucial question in this case, whether or not the representations – I think this is on a motion for reconsideration, right, or something like that, but at some later stage, whether or not those representations can be considered in making the due process analysis. You're suggesting that they shouldn't be. Is that right? That's correct. Our argument is that they shouldn't be, but even if the Court did, I think the question is still – the answer is still that his due process rights were denied for the following reason. The only contact with this witness did happen three days after the revocation had occurred, and that was in response to Mr. Price's motion for reconsideration. Mr. Price asked the Court to reconsider under Comito whether the adequate balancing test had been conducted and whether there was cause not to present that witness's testimony, and that's when counsel had a phone conversation with Ms. Kagawa, the witness in question, and she apparently had no difficulty reaching her at all. And what she reported was that Ms. Kagawa expressed to her a desire not to cooperate. Now, I think any number of witnesses, assuming that that conversation occurred as is relayed by the prosecutor – this, again, wasn't offered as an affidavit, it wasn't offered as any sort of recording, it was merely comments in the prosecutor's pleadings – but it's difficult to know whether what Ms. Kagawa was suggesting at that point was that she was not wanting to be bothered with this, whether she simply didn't want to appear because it was awkward. There are many witnesses who would prefer not to appear. That's not the same as indicating that she would have willfully refused to appear in response to a subpoena. Kagan. Kagan. As I read that recording or the transcript in the brief, they asked her directly, would you appear in response to a subpoena, and at that point, she didn't answer. She just cut it off. So they never got an answer to that question. Is that right? That's correct. So we don't know whether – we have no information on the point as to whether she would have appeared in response to a subpoena or not. That's correct. And what did Judge Hagerty know about the prior State domestic violence arrest that had been dismissed when she failed to appear? What the record showed on the previous occasion was the July hearing when the allegations were dismissed by the government and Mr. Price was continued on supervision. So this was a hearing before Judge Hagerty on an earlier motion to revoke his supervisory leave? It was. But there was no indication at that time that Ms. Kagawa had done any failure to cooperate. At this past hearing, the one that's before the Court now – No. Maybe I'm – I wasn't clear on my question. I thought there had been a prior domestic violence arrest by State authorities several months prior, and those charges had been dismissed when the victim failed to appear at the hearing in State court. There were – there was an arrest earlier May, and there had been local State court charges. The charges were dismissed. The grounds for that dismissal were a subject of some debate at our hearing. What was before the Court was that the probation officer said that Ms. Kagawa failed to appear for a hearing. The argument that I had offered to Judge Hagerty was the information that we had was that she did not appear at the grand jury, but there was no information she had been subpoenaed. So the nature of the case was that she had failed to appear at the grand jury. I read – I read Judge Hagerty's statement, and I assume it's because of his prior experience as an Oregon Circuit Court judge in handling many domestic violence cases, that he felt pretty confident that he understood why Ms. Kagawa was not there. And so I'm assuming that he understood the probation officer to mean that that prior arrest had resulted in a dismissal of charges because of the failure of the victim to cooperate. I think that's clearly what Judge Hagerty inferred, and that's what the probation officer was suggesting. Right. Our objection is that there was no evidence to that effect. And once again, Ms. Kagawa didn't have the opportunity to even appear to say anything because no one even bothered to contact her. We don't know what she would have said. And so the reasons for the prior dismissal, whether the local authorities bothered to subpoena witnesses in these circumstances, I have no idea. And I don't think Judge Hagerty knew, but he certainly was inferring that. Oh, go ahead. Go ahead. Judge Hagerty also seemed, at the conclusion of the evidentiary hearing on the second revocation, to be pretty confident in his finding that your client had been the assailant. The question, I guess, is whether or not there is sufficient evidence that he can consider without regard to the fact that the victim didn't appear in order to reach that conclusion. Can you address the state of the record at that point leading to the district court's factual finding that your client was, in fact, the assailant? Yes. Judge Hagerty clearly was confident that he could make that decision. The reasons for which he had that confidence, though, I think is what's problematic. It's as this Court had said in the Perez decision in 2008, Mr. Price's record of allegations against him were hurting him very much before Judge Hagerty. Not once had a single one of those allegations been proved. And Judge Hagerty himself said to him in finding him in violation, he said, I have no doubt that you did this again. Well, the previous time, there was no finding that he had done anything, and the probation officer had not indicated that the charges fell apart because of Ms. Kagawa's failure to cooperate. He said it was that the government was not proceeding on the allegations and that Ms. Kagawa had indicated that it was appropriate for Mr. Price to return home. So absent the hearsay evidence that was submitted, was there enough evidence in the record to indicate that Mr. Price was the assailant? No. There are photographs that corroborated what Ms. Kagawa had to say. Those photographs show that she had been injured. I think it's – there were many indications that she had been with Mr. Price immediately before that, but the only evidence that is not hearsay that was in the record were photographs showing some minor bruising on Ms. Kagawa. There are also other parts of the hearsay narrative that suggest there are other reasons why there had been a physical dispute between two people and that there were injuries on Mr. Price. There was some, according to these narratives, there was a physical dispute while Mr. Price was driving the car, and other people described him as having been more seriously injured than she. But the specific question of is there anything other than the hearsay, the only thing in the record were the photographs. Well, what about the government's argument that there were indicia of reliability as to this hearsay under excited utterances, doctrine, or other indicia? I think the photographs certainly can be considered indicia of reliability. They corroborated the witness's hearsay account. I don't believe that the report to the police officer, which is now some time after the 911 call, can be considered the sorts of statements that would have been reliable in the way an excited utterance is reliable. Ms. Kagawa at that point is making a report to the police. It's clearly a testimonial sort of statement. She has recovered somewhat. It's not the same as the 911 call, which evidence presumably would have been available to the government, but that was not introduced either. So there are no – it's not like the decision of this Court in Hall, where there was another statement that had the traditional indicia of reliability because it was made to a physician during the course of medical treatment, that sort of evidence. There is nothing like that. Not one of the narratives fits any conceivable definition of an exception to the hearsay rule or something that's not hearsay. There's one other person that the probation officer quotes, and we don't even get her last name. She's identified as Kathy, who lives near Ms. Kagawa, who said that Ms. Kagawa said she had been assaulted. She didn't offer any details. We don't have any indication of why that witness wasn't called to describe her conversation. Don't even know her last name. What happened here was not good cause for failing to call Ms. Kagawa. It was simply a lack of diligence. This would have been an easy threshold for the government to make. And under these circumstances, it's clear, Mr. Price would argue, that his due process rights were denied. Thank you very much. We'll hear from the government. Kelly's use been appearing on behalf of the United States. I'd like to start with something that Ms. Fratera mentioned about how we don't know what Ms. Kagawa would have said had she appeared at this hearing. But in fact, if you look at the transcript from that hearing, the defense predicted what she would have said. She said, locking him up for that period of time when she, Ms. Kagawa, doesn't want that. So the defense at the hearing suggested to Judge Hagerty that he should not revoke supervised release and should not place him in prison because Ms. Kagawa didn't want that. So even though at the time of the incident itself, October 4th, very clear, Ms. Kagawa was upset. She told the police officer and the probation officer she was going to follow through with charges this time. Something changed after that. We know for a fact that they reconciled after that, and we know that from several pieces of evidence in the record. First, from the statements that Mr. Price made at the hearing, we also know that the defendant was actually arrested in his apartment with Ms. Kagawa. And we know that they have five children together. And we also know that Ms. Kagawa, in her statement to the court, was, look, all I want to do is get back to my family. So just as had happened with the incident in May, where she initially makes the report to the police, then, as the probation officer notes, they reconciled, same thing happened again. So we know the same thing happened again, nothing in the record shows that the same thing happened again, does it? We know from the police report. We know that the photographs are the beginning. And Judge Hagerty said he felt that the same thing happened again. Kennedy, let me ask this question more directly. According to the summary that your opponent gave, I'll call it the non-hearsay testimony or evidence, nothing, nothing corroborates the assailant's identity, you know, that the hearsay declarants testified to. Do you agree with that? No. In other words, the hearsay identification is not corroborated? I believe there was something in addition to the photographs, and that is the ---- Well, the photographs show injury, but didn't show who did it. That's correct. But what corroborates the identity of the assailant besides the hearsay statements? The identity of the ---- nothing other than her statements to the police officer and the parish officer. Nothing like just a hearsay statement. So that's crucial to the ---- obviously to upholding the supervised release now. So what good cause has the government shown for not producing, you know, that witness, especially Cazal? And if I may, first, two answers to your question. The first is that we had the same scenario in Hall relative to the false imprisonment charge. It was only the non-testifying victim that formed the key evidence there, that in fact he had in fact falsely imprisoned her. So it is possible to sustain this without the precipient witness testifying based upon sufficient corroboration like we have here. Well, I mean, in Hall there was a tremendous amount of corroboration, if I'm remembering that correctly. And here there was no corroborating evidence other than the hearsay. So what corroborating ---- at least that's what I saw in the record. What corroborating evidence was there that was independently corroborative of her statement, hearsay statement? And with Hall, there were actually two different violations. There was the domestic violence violation and then the false imprisonment. And so there was a lot of corroboration for the domestic violence. There was very little corroboration for the false imprisonment, yet the Court still sustained that finding. Now, here, in addition to the photographs, we have the police officer who testified, I saw her. I saw her injuries. You say in addition to the photographs, but the photographs absolutely do not identify who the assailant was. That's correct. So what do you have? You can't say in addition to the photographs because that's zero. So what corroborates the identity of the assailant? I don't know. I don't have anything that corroborates the identity of the assailant. I do have corroboration for the fact that she was attacked that morning, that she was attacked while they were on their way to work. I know that, but I want to know what evidence there is that who did that. And the only evidence that we have is the fact that she was injured and the fact that she said to the police officer. The hearsay. She said that. Yes. That's all we have is the hearsay. Yes. All right. So you agree that it's only hearsay uncorroborated. Now, so the question becomes, then, what good cause did the government show for not producing that declarant? And to clarify, I do agree that we, in order to establish the identity, yes, that's just the hearsay of Ms. Kagawa. I don't agree with the premise that we didn't have corroboration based upon the physical evidence and what the police officer observed that morning that she reported the incident. But I think what we're wrestling with, Ms. Zussman, is there's no question that somebody assaulted her that morning. I don't think even the defense would dispute that. The question is, who did it? Right. And the only evidence is statements from the victim to three different people, the neighbor, the probation officer, and the police officer, that it was Mr. Price. But beyond the physical corroboration that an assault had occurred, there is nothing else in the record as it was then developed in the district court to verify her report to those three people. That is correct. And my position is we don't need more than that under Hall. So in Hall there was good cause, right? Correct. And here, one of the things that troubles me is that the government never issued a subpoena to her, despite having no indication that she would refuse to comply. How do we get around that? We get around that several ways. First off, I think that the – there's no bright-line rule that says the government has to subpoena a witness. I think had we subpoenaed her, it would have put her in a really difficult position, because at the time of the hearing, we knew, and this is from the prosecutor, who the way this usually goes is, first off, we wait to see if the State is going to pursue charges before we have the Federal hearing. So it goes to the State. They don't pursue charges. And we know from the prosecutor and from what she filed after the hearing that the reason we were here in Federal court is because she learned from the DA that they weren't – that Ms. Kagawa was not going to cooperate, they were not going to pursue State charges. So it comes back to Federal court. So our prosecutor at that point knows that she's not cooperating with the State. We also know from the probation officer that Ms. Kagawa is no longer returning his phone calls, that as of the time the defendant was arrested, she's not returning his calls anymore. So we have an indication that these two have reconciled again and that she's not going to appear. Now, this takes this case really out of alignment with both Comiteau and Hall, because in Comiteau and Hall, we have ex-girlfriends. In this case, we have someone who is currently in a domestic relationship with the defendant. So is the rule that you're seeking that where there's a strong inference for the government that a witness won't appear, that should be enough to relieve the government of the obligation to bring – to make efforts to bring that witness in? Because the government actually made no efforts prior to the hearing. That's correct. So is that – is that the rule that we would have to adopt, a strong inference or there was evidence strongly showing or suggesting that the witness wouldn't show up, that that should be enough? I think as Comiteau acknowledged, it needs to be a case-by-case, circumstance-by-circumstance. So I'm not suggesting any sort of a bright-line rule. I am suggesting that the government had enough information here to know that Ms. Kagawa was not going to show up, or if she did, she was going to be placed in the untenable situation of either having to testify against her domestic partner and the father of her child, or face potential perjury charges, or even receiving the subpoena that commands her to appear. She faces potential contempt if she doesn't do so. But why didn't the government put that in the record? I heard Ms. Frisero say, and I think she's absolutely right, that had the government done its homework and been diligent about laying out maybe in a declaration, or perhaps having the probation officer testify to everything that you just said, that would have been sufficient in order to permit the district court to make a finding that the witness was unavailable and that therefore the reports to the police officer, the neighbor, and the probation officer could come in without violating confrontation rights. But as Judge Tashima noted in his earlier questioning, the problem here is that didn't come in until after the government responded to the motion for reconsideration, and then it was in the form of pleadings. There wasn't even a declaration attached to verify that those were the facts. So is that good enough under our existing case law of Hall and Comito and the Supreme Court, the confrontation clause violation here? And, yeah, I think what we have here is good enough. And granted, it would have been ideal if we had had sort of a good cause chart that we could have presented to the district court laying all of this out. But everything that I've talked about today is in this record. It's all here. It was all before Judge Hagerty. And in terms of his consideration of what we proffered to the court after the hearing and in response, and I'm sorry, I see that I'm out of time. May I finish my answer? Yeah. Go ahead. That we proffered to the court after the hearing, Judge Hagerty certainly was within his discretion to have rejected that. But it was also within his discretion to have accepted it, as he did, say that's good enough, that's good cause, I understand why you didn't call Ms. Kagawa to the hearing as a witness. And I'm going to say it's good cause, and I'm going to say I've got plenty of evidence here to sustain this finding that he violated the terms of his supervised release. I'm not coming to you with a perfect record, but I am coming to you with a record that I think is good enough. It sustains Judge Hagerty's findings here. Judge Hagerty had absolutely no doubt that Mr. Price assaulted Ms. Kagawa on the morning of October 4th, that he had anger management issues that had to be addressed, and he ruled accordingly. I think we have enough of a record here. I think the circumstances fully support what Judge Hagerty did and why he did it. Thank you. Roberts. Thank you. Mr. Cera, I'll give you a minute on rebuttal. To respond to the discussion of the Hall case, in that case, the complaining witness was at a homeless shelter, and the police went to look for her, and she was then gone. That was a huge part of why the Court felt that the government had met its good cause burden. In addition, she was corroborated by a percipient witness to the first part of the story, the assault, and that helped make her credible in the part of the story that was about the false imprisonment. Finally, she described a golf club that was wielded by her assailant, and when the police went to the apartment, they found the weapon where she said it would be. There was much more corroboration in the Hall case than there is in this one, and more evidence of good cause. I don't believe it's accurate, as Ms. Guzman indicated, that the record before Judge Hagerty had all of that information to establish good cause. There is a lot of innuendo here that Mr. Price must be the kind of guy who does this. There was not a single previous sustained allegation in the pre-sentence report or in any prior revocation proceedings. Even if the prosecutor, after the fact, tells us that the DA decided not to pursue the charges, that does not mean that that was Ms. Kagawa's fault. The Court should have heard from her and evaluated what she had to say about what happened that day. Thank you. Thank you both very much. That case just argued is submitted.
judges: Tashima, Tallman, Ikuta